Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS<br><br>Apelante<br><br>v.<br><br>DIVISIÓN DE EMPLEADOS PÚBLICOS DE LA UNIÓN GENERAL DE TRABAJADORES<br><br>Apelados | KLCE202301017 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV04410<br><br>Sobre: Impugnación de Laudo: AQ-20-0416 Procedente de CASP |

Panel integrado por su presidente, el juez Rodríguez Casillas, el juez Salgado Schwarz y el juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2023.

Comparece ante nos el Departamento del Trabajo y Recursos Humanos (DTRH o parte peticionaria), para que revisemos la *Sentencia* emitida el 12 de agosto de 2023,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), que confirmó el *Laudo Arbitraje* que revocó la destitución de cuatro (4) empleados del DTRH y ordenó la reinstalación a sus puestos de trabajo.

Examinado el recurso de *certiorari*,[2] se **expide el auto solicitado y se revoca** la *Sentencia* recurrida. Veamos los fundamentos.

**-I-**

Surge de los autos ante nuestra consideración, que cuatro (4) empleados públicos con puestos de carrera, cuyos empleos e

---

[1] Notificada el 16 de agosto de 2023.
[2] Por error, este recurso se presentó como un recurso de apelación, por lo que correctamente lo acogimos como un recurso de *certiorari* con el número alfanumérico KLCE202301017.

ingresos **no** fueron afectados por la pandemia del COVID-19, solicitaron los beneficios del *Pandemic Unemployment Assistance* (PUA).

Por lo que, el **6 de octubre de 2020** el Secretario del DTRH, Hon. Carlos J. Rivera Santiago (Secretario), notificó mediante cartas, la **intención de destituir de sus puestos a: (1)** *Rafael Acevedo Acevedo*, **(2)** *Ivelisse Rivera Rodríguez*, **(3)** *Tito García Bruno* y **(4)** *Emanuel Díaz Reyes* (empleados, querellantes o parte recurrida).[3] Conforme a la investigación realizada por el DTRH, los cuatro (4) empleados no incluyeron en la solicitud del PUA que eran empleados de carrera a tiempo completo del DTRH, como tampoco informaron los salarios devengados durante el periodo para el cual solicitaron los beneficios. De igual forma, omitieron notificar que su salario no había sido interrumpido durante la emergencia.

Ante tal actuación, el DTRH acusó a los empleados de contravenir la ley federal *Coronavirus Aid Relief and Economy Security Act* (CARES Act) y el *Manual de Normas de Conducta y Procedimientos sobre Medidas Correctivas y Acciones Disciplinarias del Departamento del Trabajo y Recursos Humanos* (Manual del DTRH). Razonó que la falta de información esencial en la solicitud del PUA, demuestra la intención de los empleados en ocultar datos y el ánimo de someter datos falsos en la reclamación. En efecto, se les imputó la comisión de las siguientes infracciones al Manual del DTRH:

> ***Número 30:*** *Apropiación ilegal de objetos o dinero de fondos y bienes del Departamento o intención de esto.*
> ***Número 31:*** *Uso y manejo indebido de fondos y bienes del Departamento o intención de esto.*
> ***Número 32:*** *No cumplir con las normas establecidas mediante Leyes, Reglamentos y Órdenes Administrativas que rigen al Departamento.*
> ***Número 40:*** *Conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre, refleje descrédito o ponga en dificultad al Departamento o cualquier agencia o dependencia del gobierno.*

---

[3] Apéndice del recurso de la parte peticionaria, págs. 25 – 32.

> ***Número 51:*** *Radicar reclamaciones falsas, viciosas y maliciosas en contra del Departamento, funcionarios o empleados.*
> ***Número 58:*** *Hacer declaraciones fraudulentas en planillas o formularios del gobierno.*
> ***Número 62:*** *Uso impropio, ilegal o indebido de propiedad de la agencia.*[4]

En consecuencia, se les notificó la celebración de una vista administrativa,[5] que fue celebrada el 27 de octubre de 2020 ante el Oficial Examinador, Lcdo. Phillip Mesa (OE) y determinó que los empleados infringieron el Manual del DTRH,[6] y violaron la Ley Núm. 8–2017;[7] al respecto, hizo las mismas determinaciones de hechos para cada uno de los cuatro (4) empleados:

> *El DTRH comenzó una investigación al [...] por haber solicitado beneficios del PUA, afirmando en su solicitud que su trabajo como contratista independiente era su principal fuente de ingresos al momento de la pandemia. Sin embargo, omitió indicar que era empleado de carrera en el DTRH.*
> *La Secretaría Auxiliar de Recursos Humanos del DTRH una investigación sobre las alegaciones, rindiendo un informe al Secretario. La investigación incluyó la siguiente evidencia, la cual fue evaluada por el Oficial Examinador y no fue objetada por el empleado:*
> 1. *Solicitud inicial de beneficios de PUA (PR-PUA--l) con fecha de 29 de abril de 2020.*
> 2. *Copia de la pantalla 01, perfil del reclamante en el sistema de SABEN.*
> 3. *Copia de la pantalla 07, que muestra el historial de pago del beneficio regular que ha recibido. El mismo fue desde el 28 de marzo de 2020 hasta el 22 de agosto del 2020 por la cantidad de $600 semanales.*
> 4. *Copia de la pantalla 77, que muestra el historial de pago del beneficio de PUA recibido. El mismo fue desde el 4 de abril hasta el 25 de julio de 2020 por la cantidad de $600 semanales.*
> 5. *Copia de la pantalla 04, que muestra para que patrono el reclamante trabajaba o si es un empleado por cuenta propia.*
> 6. *Copia de la pantalla 12, que muestra las características del reclamante.*

---

[4] *Id.*

[5] *Id.*, en las págs. 33 – 64.

[6] El OE emitió una determinación por cada empleado, sin embargo, los fundamentos esbozados son los mismos. *Véase*:
   (1) Vista ante el OE del Sr. Rafael Acevedo Acevedo. Anejo I del recurso de la parte peticionaria, págs. 33 – 40;
   (2) Vista ante el OE de la Sra. Ivelisse Rivera Rodríguez. Apéndice del recurso de la parte peticionaria, págs. 41 – 48;
   (3) Vista ante el OE del Sr. Tito E. García Bruno. Apéndice del recurso de la parte peticionaria, págs. 49 – 56;
   (4) Vista ante el OE del Sr. Emanuel Díaz Reyes. Apéndice del recurso de la parte peticionaria, págs. 57 – 64.

[7] Ley Núm. 8 del 4 de febrero de 2017, según enmendada, conocida como *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, 3 LPRA sec. 1469 *et seq.*

**7.** *Copia de la hoja de anotaciones donde se establece que este caso está en investigación.*

**8.** *Copia de la pantalla del MUNIS. Este es el sistema interno de Recursos Humanos que fue utilizado para corroborar la dirección de la reclamación.*

**9.** *Reporte de horas trabajadas en el DTRH durante el tiempo que el empleado recibió PUA.*

**10.** *Hoja del historial de nómina, donde se muestra que recibió pago por su empleo de carrera en el DTRH.*

**11.** *Documento del Banco Popular donde indica que los cheques fueron emitidos pero no han sido cambiados.*[8]

Basado en dichas determinaciones de hechos, el OE recomendó —y así fue acogido por el Secretario el 17 de noviembre de 2020—[9] la destitución de los empleados por la comisión a las infracciones 30, 31, 32, 40, 51, 58 y 62 al Manual del DTRH. En cada uno de los cuatro (4) empleados, concluyó que:

> *Nos encontramos en un momento histórico en Puerto Rico y el mundo, mientras enfrentamos la pandemia del Covid-19. Por tal razón, el Congreso de Estados Unidos extendió los beneficios de desempleo para individuos que trabajan por cuenta propia, ante el cierre de la economía de la mayoría de las jurisdicciones. La extensión de estos beneficios a Puerto Rico, obliga al Gobierno a fiscalizar para que haya la utilización responsable de los recursos federales.*
> *Mientras miles de personas no recibían ingresos durante la pandemia, al empleado de epígrafe, siendo empleado del DTRH (agencia encargada de administrar el desempleo en la isla), omitió en su solicitud del PUA sus ingresos como empleado. Si bien es cierto que había dejado de recibir ingresos como dueño de negocio, lo cierto es que sí continuó recibiendo su ingreso como empleado del DTRH.*[10]

Inconforme, la División de Empleados Públicos de la Unión General de Trabajadores (UGT) sometió ante la Comisión Apelativa del Servicio Público (CASP) cuatro (4) escritos de *Solicitud de Arbitraje de Quejas y Agravios*,[11] de los empleados despedidos.

Consolidados los casos, las partes acordaron la contención a ser resuelta por acuerdo de sumisión:

---

[8] Apéndice del recurso de la parte peticionaria, págs. 34–36 (Rafael Acevedo Acevedo); págs. 42–44 (Ivelisse Rivera Rodríguez); págs. 50–52 (Tito García Bruno Reyes); y, págs. 58–60 (Emanuel Díaz Reyes).

[9] Apéndice del recurso de la parte peticionaria, págs. 25–26 (Rafael Acevedo Acevedo); 27–28 (Ivelisse Rivera Rodríguez); 29–30; (Tito García Bruno Reyes); y, 31–32 (Emanuel Díaz Reyes).

[10] Apéndice del recurso de la parte peticionaria, págs. 39–40 (Rafael Acevedo Acevedo); 47–48 (Ivelisse Rivera Rodríguez); 55–56; (Tito García Bruno Reyes); y, 63 – 64 (Emanuel Díaz Reyes).

[11] Apéndice del recurso de la parte peticionaria, págs. 160 – 167.

> *Determinar si el Departamento del Trabajo y Recursos Humanos destituyó al querellante Rafael Acevedo Acevedo, Ivelisse Rivera Rodríguez, Tito E. García Bruno Reyes y Emanuel Díaz Reyes, en violación a la ley "Coronavirus Aid, Relief and Economy Security" (CARES) de 2020, y al debido proceso de ley. De resolver en la afirmativa, ordenar su revocación y proveer su reinstalación inmediata en su empleo en la Agencia, con los salarios y haberes dejados de recibir.[12]*

En lo que respecta a la posición de las partes, en síntesis, el DTRH adujo que los empleados infringieron el buen nombre de la agencia al solicitar los beneficios del *Pandemic Unemployment Assistance,* por sus siglas (PUA), sin tener derecho a ello, ya que omitieron información de que estaban empleados y recibiendo ingresos del DTRH durante la Pandemia del Covid-19. Por su parte, la UGT alegó que los empleados fueron despedidos sin justa causa.

El **13 de mayo de 2022 y 21 de junio de 2022**, se celebraron las vistas de arbitraje, en las que ambas partes estuvieron representadas por sus abogados; además, de la prueba documental, el DTRH presentó a la testigo, Karla Michael Vallejo De Jesús, oficinista III del Negociado de Seguridad de Empleo, Sección de Beneficios, Unidad Interestatal del DTRH y la UGT presentó como testigo al señor Rafael Acevedo Acevedo.

El testimonio de la señora Karla Michael Vallejo De Jesús consistió en explicar cuáles eran las personas que tenían derecho a beneficiarse del PUA y la información que debían cumplir para recibir la ayuda. En lo relativo a esta controversia, la testigo declaró:

> **ÁRBITRO:**
> R    Que se haya, verdad, si recibieron un dinero de manera ilegal porque … haga esa pregunta, pero específicamente a los querellantes.
>
> **LCDA. MARELINE ACEVEDO:**
> P    ¿Qué fue lo que pasó?
>
> **TESTIGO:**
> R    "Okay". Lo que sucede es que en este Programa 555 obviamente se hizo para acelerar los procesos. Sin embargo, pues, cuando se llenaba la renovación tenían que informar todas las fuentes de ingreso y que pasaba con cada uno de esos patronos. Eh, la única manera de detener estos pagos era que cuando una persona que hiciera la

---

[12] Nota al calce omitida. Apéndice del recurso de la parte peticionaria, en la pág. 111.

reclamación informara un trabajo que creara, como lo que nosotros llamamos, un punto controvertible. Por ejemplo, o sea, si yo tengo dos trabajos, eh, pues notifico los dos, pero yo quedé cesanteado de ambos trabajos y, pues, no hay ningún problema, o sea, el caso va a salir. Sin embargo, si no hay ninguna situación que evite, que cree como que un indicador que diga: "*Hay que verificar ese caso antes de pagar*", el sistema va a emitir pago, que fue lo que sucede. Entonces, *¿qué pasa?* Que el último patrono mencionado si es él por cuenta propia y yo me vi afectado el sistema entiende que eso es lo único, que se perdió la fuente de ingresos, no hay que verificar más nada porque ése el último y nosotros reportamos el último.  Y, pues, por eso, eh, (ininteligible).

**LCDO. EDWIN RIVERA:**
**P**      Árbitro, si me permite continuar con la objeción. Puntualmente hablando lo que usted dijo no lo contestó, porque no habló de ninguno de los querellantes. Rafael, Tito, Ivelisse y Emanuel por qué recibieron el PUA si según usted no tenían derecho a recibirlo.

**ÁRBITRO:**
**P**      ¿Esa explicación es aplicable a Rafael, Tito y a... la otra querellante? Disculpe, se me olvidó el nombre.

**LCDO. EDWIN RIVERA:**
**R**      Ivelisse.

**TESTIGO:**
**R**      Bueno, si no informaron su patrono, su patrono principal, o sea, no está informado. **En esos cuatro casos no está informado el patrono que continuaba que era el Departamento del Trabajo**. O sea, ese patrono no aparece. **Si ese patrono, que si en ese momento todos estaban ya empleados, había que notificarlo y entonces ese patrono pues si tú estás actualmente trabajando con ese patrono el sistema te ponía porque tienes... estás hablando por cuenta propia pero tienes otro.  Y actualmente, cuando viene la reclamación ese patrono, todas las fuentes de ingreso se tenían y ese patrono tenía que estar, esa fuente de ingresos tenía que estar y decir: "actualmente sigo trabajando". Esa información no estaba.** El caso sale automáticamente pago porque si no se detiene de esa manera, o sea, si yo estoy trabajando ahora mismo y yo digo: "*Yo tengo mi negocio por cuenta propia. También tengo un empleo a tiempo completo que no me dejan de pagar en la pandemia, no me dejaron de pagar. Yo lleno una reclamación, me piden todas las fuentes de ingresos, todos los patronos*".  Si todos se vieron afectados el sistema obviamente también va a pagar. **Pero si hay uno y tú sigues trabajando, el sistema iba a detener porque iba a decir, "*aquí hay algo que verificar antes de emitir pago*", y eso, verdad, eso es uno de los problemas que ocurrió en este caso**.

**LCDO. EDWIN RIVERA:**
**P**      Árbitro, si me permite. Seguimos sin hablar de un querellante en específico. Que diga entonces si participó en la evaluación de los casos de los querellantes porque entonces no entiendo ahora porque hubo mucha generalidad y no puntual de cada caso del querellante que sus circunstancias son distintas.

**ÁRBITRO:**
**R**      "Okay". Se anota la objeción, y no obstante, vamos a permitir que la licenciada continúe con las preguntas y...

**LCDA. MARELINE ACEVEDO:**
**P**      Cuando un caso que fue llenado por el 555, *¿hubo intervención de alguna persona?*

**TESTIGO:**
**R**      **No, no**. Fue el sistema.
**P**      Eh, o sea, que lo que usted está hablando es que ahí no hubo intervención de nadie.
**R**      **No**.
**P**      *¿Y en qué momento iba a haber intervención de alguna persona?*
**R**      Solamente en el caso que hubiese un punto controvertible o una situación que no permitiera que saliera el pago, que era de acuerdo a la información provista en la información que llenara.
**P**      *¿Y en estos casos salió el pago?*
**R**      Salió.
**P**      Por lo tanto, no hubo intervención, no hubo ninguna persona.
**R**      **No hubo ninguna intervención**.

**ÁRBITRO:**
**P**      (Inaudible).

**LCDA. MARELINE ACEVEDO:**
**P**      Eh, *¿qué ayuda, si alguna, había para una persona asalariada que hubiese tenido un negocio propio que lo ayudara, verdad, a palear la pérdida de ingreso, qué ayuda había, si alguna?*

**TESTIGO:**
**R**      Bueno, solamente existía una ayuda, eh, **si ambos empleos se vieron afectados**. **No podía ser solamente una**. Y esa ayuda es el MEUA, o el "*Mix Earning Unemployment Assitance*", verdad, que ese beneficio era si la persona tenía "*mix earning*", por eso habla del "*mix*", **si una persona tenía un empleo, un patrono asegurado y adicional tenía un negocio por su cuenta y se vio afectado de ambos, podía llenar la reclamación de desempleo y adicional solicitar el MEUA o el "*Mix Earning Unemployment Compensation*", que se llenaba por la plataforma de "fast PUA"**, eh, y en cada semana elegible para desempleo regular el sistema si cualificaba o había declarado cinco mil dólares o más y estaba registrado en Hacienda y todo eso como comerciante, eh, si hubiese ganado cinco mil dólares el año anterior a la reclamación de beneficios, se le iba a aprobar cien dólares adicionales a lo que cobraba de su reclamación de desempleo. **No para casos en que solamente se haya visto uno de los dos, verdad. Solamente, por ejemplo, si se vio afectado solamente el empleo propio y no el, el empleo asegurado, por así decirlo, pues no había ningún beneficio, que verdad, que ayudara a las personas que habían tenido esa pérdida en su negocio solamente, verdad. Tenía que estar los dos**.[13]

---

[13] *Véase, Transcripción de la Vista* del 13 de mayo de 2022, el testimonio de Karla Michael Vallejo De Jesús, en el Apéndice del recurso de la parte peticionaria, en las págs. 218 – 224.

En el contrainterrogatorio, indicó no haber intervenido directamente con los querellantes ni haber atendido solicitud de beneficios dado que las mismas se hicieron mediante sistema operacional en computadoras, que no permitían ninguna intervención. [14]

En lo que respecta al testimonio del señor *Rafael Acevedo Acevedo,* en síntesis, aceptó haber solicitado los beneficios del PUA por un negocio propio de desempeñaba, pero indicó que no recibió ningún pago en cheque.[15]

Finalmente, el **11 de abril de 2023** se emitió el *Laudo de Arbitraje,*[16] en la cual fue revocada la Resolución de destitución. En ese sentido, el árbitro esbozó las siguientes determinaciones de hechos para cada uno de los empleados destituidos:

**(AQ-20-041 6, Rafael Acevedo Acevedo)**

*1. El querellante, Rafael Acevedo Acevedo trabaja en el Departamento del Trabajo y Recursos Humanos, por sus siglas (DTRH) como Técnico de Capacitación en la Región de Arecibo de Secretaría Auxiliar de Adiestramiento y Promoción de Empleo, por sus siglas (SAAPE).*

*2. El querellante completó una solicitud de asistencia bajo el PUA en línea el 29 de abril de 2020, por concepto de sus negocios Café Patria y Consultoría en Contabilidad.*

*3. El DTRH no presentó la carta de formulación de cargos disciplinarios contra el querellante; tampoco la carta de imposición de la destitución.*

*4. El querellante tiene un negocio de servicios de contabilidad, auditoría y servicios relacionados y además trabaja para establecimiento de importación y exportación de productos cuyo nombre es "Importadores y Exportadores Cristian Somma, Inc." que opera haciendo negocios como "Café Patria".*

*5. El querellante presentó un certificado de registro expedido por el Departamento de Estado de Puerto Rico con fecha de 10 de diciembre de 2019, dando cuenta de que Importadores y Exportadores Cristian Somma, Inc., es una corporación doméstica con fines lucrativos con el número de registro 4376974.*

*6. El querellante presentó una certificación como "Especialista en Planillas", número de registro 22122, expedida por el Departamento de Hacienda de Puerto Rico el 6 de febrero de 2018.*

*7. El querellante presentó un Certificado de Registro de Comerciante número 0091404-0022, expedido por el Departamento de Hacienda de Puerto Rico a nombre de Rafael Acevedo Acevedo el 28 de febrero de 2018.*

---

[14] *Véase, Transcripción de la Vista* del 13 de mayo de 2022, el contrainterrogatorio de Karla Michael Vallejo De Jesús, en el Apéndice del recurso de la parte peticionaria, en las págs. 243 – 265.

[15] *Véase, Transcripción de la Vista* del 21 de junio de 2022, el testimonio de Rafael Acevedo Acevedo, en el Apéndice del recurso de la *parte peticionaria, en las págs. 274 – 331.*

[16] Apéndice del recurso de la parte peticionaria, págs. 110 – 135.

**8.** *El querellante presentó un Certificado de Registro de Comerciante número 0091404-0022, expedido por el Departamento de Hacienda de Puerto Rico a nombre de Rafael Acevedo Acevedo el 1 de febrero de 2020.*

**9.** *El querellante presentó un Certificado de Incorporación expedido por el Departamento de Estado de Puerto Rico el 10 de diciembre de 2019, a nombre de Importadores y Exportadores Cristian Somma, Inc. Del referido documento surge que su presidente es el querellante Acevedo Acevedo.*

**10.** *El querellante presentó además una certificación del servicio de rentas internas federal (por sus siglas en ingles IRS) de 10 de diciembre de 2019, a nombre Importadores y Exportadores Cristian Somma, Inc. con el número de identificación patronal 66-0936950.*

**11.** *El querellante presentó un Certificado de Registro de Comerciante número 1099764-0010, expedido por el Departamento de Hacienda de Puerto Rico a nombre de Importadores y Exportadores Cristian Somma, Inc. ("Café Patria"), el 11 de mayo de 2020.*

**12.** *La Sra. Carla Vallejo (testigo de la Agencia), aceptó no tener propio y personal conocimiento de los hechos imputados a los querellantes, ni haber atendido solicitud alguna del Pandemic Unemployment Assistance (PUA), a nombre del querellante, Rafael Acevedo Acevedo.*

**13.** *El 25 de noviembre de 2020, el querellante, Rafael Acevedo Acevedo, radicó una solicitud de Arbitraje de Quejas y Agravios, ante la Comisión Apelativa del Servicio Público. Allí alegó que: "El querellante fue destituido de su empleo injustificadamente. La falta imputada no fue cometida. La medida impuesta es improcedente, desproporcional, contraria a la ley y a la reglamentación vigente". Como remedio solicitó la: Revocación de la destitución y se restituya en el empleo con los salarios y haber dejados de recibir".*[17]

### (AQ-20-0421, Ivelisse Rivera Rodríguez)

**1.** *En la Solicitud de Arbitraje de Quejas y Agravios presentada por la UGT el 2 de diciembre de 2020, en representación de la querellante Ivelise Rivera Rodríguez se alegó que: "La querellante fue destituida de su empleo injustificadamente, La falta imputada no fue cometida. La medida impuesta es improcedente, desproporcional contraria a la ley y a la reglamentación vigente. Como remedio solicitó la revocación de la medida disciplinaria impuesta con los salarios y haberes dejados de recibir.*

**2.** *El DTRH no presentó la carta de formulación de cargos disciplinarios contra la querellante Rivera Rodríguez ni la determinación final de destitución.*

**3.** *Con respecto a la querellante, Ivelisse Rivera Rodríguez, la Agencia no presentó documento alguno relacionado con solicitud y/o recibo de dinero por concepto del PUA.*

**4.** *La Sra. Carla Vallejo (testigo de la Agencia), aceptó no tener propio y personal conocimiento de los hechos imputados a todos(as) los(as) querellantes, tampoco haber atendido solicitud alguna de beneficios sobre el PUA de la empleada, Ivelise Rivera Rodríguez.*[18]

### (AQ-20-0422, Tito E. García Bruno)

**1.** *En la Solicitud de Arbitraje de Quejas y Agravios presentada el 2 de diciembre de 2020, por la UGT a nombre del querellante, Tito E. García Bruno, se alegó que "El querellante fue destituido de su empleo injustificadamente. La falta imputada no fue cometida. La medida impuesta es improcedente, desproporcional, contraria a la ley y a la reglamentación vigente". El DTRH no presentó la carta de*

---

[17] *Id.*, en las págs. 113 – 114.
[18] *Id.*, en la pág. 115.

*formulación de cargos disciplinarios contra el querellante García Bruno, ni la determinación final de destitución.*
*2. Con respecto al querellante, Tito E. García Bruno, la Agencia no presentó documento alguno relacionado con solicitud y/o recibo de dinero por concepto del PUA.*
*3. La Sra. Carla Vallejo (testigo de la Agencia), aceptó no tener propio ni personal conocimiento de los hechos imputados a los querellantes, tampoco haber atendido solicitud alguna de beneficios sobre el PUA del querellante Tito E. García Bruno.[19]*

### (AQ-20-0423, Emmanuel Díaz Reyes)

*1. En la Solicitud de Arbitraje de Quejas y Agravios presentada por la UGT, en representación del querellante, Emmanuel Díaz Reyes, el 2 de diciembre de 2020, se alegó que: "El querellante fue destituido de su empleo injustificadamente. La falta imputada no fue cometida. La medida impuesta es improcedente, desproporcional, contraria a la ley y a la reglamentación vigente".*
*2. El DTRH no presentó la carta de formulación de cargos disciplinarios contra el querellante Díaz Reyes, ni la determinación final de destitución.*
*3. La Agencia no presentó documento alguno relacionara al querellante, Emmanuel Díaz Reyes, con solicitud y/o recibo de dinero por concepto del PUA.*
*4. La Sra. Carla Vallejo (testigo de la Agencia), aceptó no tener propio ni personal conocimiento de los hechos imputados a los querellantes, ni haber atendido solicitud de beneficios alguno del querellante Emmanuel Díaz Reyes.[20]*

En consecuencia, determinó que las destituciones fueron sin justa causa, por lo que ordenó al DTRH la restitución de los empleados a sus puestos de trabajo y el pago retroactivo a la fecha de su destitución:

> *La destitución impuesta a los querellantes Rafael Acevedo Acevedo (AQ-20-0416), lvelisse Rivera Rodríguez (AQ-20-0421) Tito García Bruno (AQ-20-0422) y Emanuel Díaz Reyes (AQ-20-0423), fue en violación a la Ley CARES del 2020, por consiguiente, no fue mediante justa causa. En consecuencia, se ordena al Departamento del Trabajo y Recursos Humanos a que reinstale a los cuatro querellantes a sus puestos, les pague todos los haberes dejados de devengar desde la fecha de efectividad de la destitución se le hagan los descuentos que en ley procedan y se le retire toda carta o documento inherente a la destitución, de cualquier expediente de recursos humanos que se haya archivado copia. Todo lo anterior, en un término de 30 días que transcurrirán a partir de la notificación y registro del presente Laudo*
>
> *Se apercibe a la parte adversamente afectada por el presente Laudo que podrá presentar un recurso de revisión judicial ante el Tribunal de Primera Instancia dentro del término jurisdiccional de treinta días, contados a partir de la fecha de archivo en autos de la notificación del presente Laudo. De igual forma, copia del recurso de revisión judicial deberá ser notificado a todas las partes en el presente caso. De no presentarse un recurso de revisión judicial dentro de los términos antes dispuestos, este Laudo advendrá final y firme.[21]*

---

[19] *Id.*
[20] *Id.*, en la pág. 116.
[21] *Id.*, en la pág. 134.

En desacuerdo, el **11 de mayo de 2023** el DTRH presentó un recurso de revisión ante el TPI.[22] Entre otras cosas, adujo que el análisis del árbitro es completamente diferente a la aplicación de las disposiciones del CARES Act. Señaló, que el árbitro omitió las cartas de despido y lo alegado por el DTRH para determinar justa causa en las destituciones. Arguyó que los empleados no eran elegibles para recibir el PUA, ya que su fuente principal de ingresos como empleados del DTRH no fue afectada, por lo que, la omisión de dicha información esencial constituyó una violación a los estatutos del CARES Act.

Oportunamente, la UGT sometió su escrito en oposición,[23] y en resumen, alegó que el árbitro actuó correctamente, por lo que su determinación no adolece de ninguna de las causales de nulidad, ya que el DTRH no cumplió con el *quantum* de prueba para sostener la sanción imputada.

Examinadas las mociones de ambas partes, el TPI emitió *NO HA LUGAR* en la *Sentencia* del **12 de agosto de 2023**,[24] en lo pertinente, expresó:

> *Por lo tanto, examinada la petición y los documentos con ella sometidos, este Tribunal declara* **NO HA LUGAR** *la petición de epígrafe y* **confirma el Laudo de Arbitraje AQ-20-0416** *emitido por el Árbitro Andrés Feliciano Morales del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de fecha 11 de abril de 2023. El Laudo se repite e incorpora aquí para que se haga parte de esta Sentencia.*[25]

El **13 de septiembre de 2023**, el DTRH acude ante este foro intermedio y señala la comisión de dos (2) errores:

> 1.    *Erró el TPI al confirmar el Laudo concluyendo así que no procede el despido de los empleados de la Agencia a pesar de que el despido fue por violación al Cares Act de 2020.*
> 2.    *Erró el TPI al confirmar el laudo arbitraje y no considerar las cartas de destitución de los querellantes*

---

[22] Apéndice del recurso de la parte peticionaria, págs. 1 – 167.
[23] Apéndice del recurso de la parte peticionaria, págs. 168 – 190.
[24] Notificada el 16 de agosto de 2023. Apéndice del recurso de la parte peticionaria, págs. 332 – 343.
[25] *Id.*, en la pág. 343. *Énfasis nuestro.*

*ni la determinación del oficial examinador como parte*
*del debido proceso de ley.*

Tras varios trámites procesales, el **6 de octubre de 2023** la UGT sometió *"Alegato de la parte recurrida"*, y así, quedó perfeccionado para la consideración de esta Curia.

**-II-**

**-A-**

El auto de *certiorari* es un vehículo procesal de carácter discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior rango.[26] En ese sentido, la discreción es el poder de decidir en una u otra manera, esto es, para escoger entre uno o varios cursos de acción.[27]

Por ello, la Regla 52.1 de Procedimiento Civil,[28] nos delimita las instancias en que habremos de atender y revisar vía *certiorari* las resoluciones y órdenes emitidas por los tribunales de instancia, a saber:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [...].*[29]

Con el objetivo de que podamos ejercer de una manera prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones,[30] nos dicta los siguientes criterios al determinar si expediremos o no el auto de *certiorari:*

---

[26] *Mun. Autónomo de Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711 (2019).; *IG Builders v. BBVAPR*, 185 DPR 307, 337 – 338 (2012).
[27] *García v. Asociación*, 165 DPR 311, 321 (2005).
[28] Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V., R. 52.1.
[29] *Id.*
[30] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40.

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
>
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
>
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.* [31]

Por lo cual, aunque tengamos discreción judicial para expedir o denegar el auto de *certiorari*, nuestro Tribunal Supremo ha dispuesto que:

> *[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[32]

**-B-**

A tono con lo antes dicho, el mecanismo procesal que tiene disponible una parte que desea cuestionar una sentencia final emitida por un Tribunal de Primera Instancia para revisar un laudo de arbitraje, lo es el recurso de *certiorari*. [33]

Como regla general, una vez finaliza un trámite ante el árbitro, sus determinaciones contenidas en el laudo son finales e inapelables, por lo que las cuestiones atendidas en un laudo no pueden litigarse ante los tribunales.[34]

---

[31] *Id.*

[32] *Id.*; *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).; *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[33] *Hospital del Maestro v. UNTS*, 151 DPR 934, 942 (2000).

[34] *Vivoni Farage v. Ortiz Carro*, 179 DPR 990, 1007 (2010).

Ello responde al principio de auto restricción y en la deferencia que los tribunales otorgamos a la interpretación de los árbitros.[35] Sin embargo, existen situaciones donde los tribunales no están impedidos de intervenir con estos. Los laudos de arbitraje se pueden impugnar judicialmente si se demuestra: **(a)** la existencia de fraude; **(b)** conducta impropia del árbitro; **(c)** falta de debido proceso de ley; **(d)** que el laudo resulte contrario a la política pública; **(e)** falta de jurisdicción; o **(f)** que no se resuelvan todas las cuestiones de controversias que se presentan.[36]

Finalmente, cabe señalar además que en cuanto a las determinaciones laborales que los árbitros emiten mediante laudos, los tribunales confieren gran deferencia a estos. A esos fines, el Tribunal Supremo, ha señalado específicamente lo siguiente:

> *[L]os tribunales confieren gran deferencia a las interpretaciones que haga el árbitro en el laudo de arbitraje relacionado a lo acordado en el convenio colectivo. Por tal razón, la revisión judicial de los laudos emitidos en el procedimiento de arbitraje se limitará a las instancias en las cuales quede demostrada la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que el laudo sea contrario a la política pública. Lo anterior implica que un laudo no puede anularse por meros errores de criterio ya sean éstos en cuanto a la ley o en cuanto a los hechos.*[37]

**-C-**

En marzo de 2020, el Congreso de los Estados Unidos promulgó el *Coronavirus Aid, Relief, and Economic Security Act* (CARES Act),  mediante el cual creó un programa federal temporero llamado *Pandemic Unemployment Assistance* (PUA).[38]

A esos fines, Puerto Rico, como parte de los territorios de los Estados Unidos, fue incluido en el programa de asistencia.[39]

---

[35] *Depto. Educ. v. Díaz Maldonado*, 183 DPR  315, 325 (2011).
[36] *Id.*, en las págs. 325 – 326.
[37] *COPR v. SPU*, 181 DPR 299, 328–329 (2011). Casos citados omitidos.
[38] 15 USCA sec. 9021.
[39] 15 USCA sec. 9021(a)(5).

Específicamente, el PUA se estableció para combatir los efectos de la pandemia de COVID-19 y proveer un alivio a los trabajadores.[40]

> *En general, PUA provee hasta un máximo de treinta y nueve (39) semanas de beneficios para individuos cubiertos que no son elegibles para recibir compensación por desempleo regular, y que están desempleados o parcialmente empleados por ciertas razones específicas relacionadas al COVID-19. Incluye a cuentapropistas, aquellos en búsqueda de empleo a tiempo parcial, individuos sin suficiente historial de trabajo y aquellos quienes no cualifican para desempleo regular.[41]*

En la sección de definiciones, precisa que es un *Covered individual*:

> ***(3) Covered individual***
> *The term "covered individual"--*
> ***(A)*** *means an individual who--*
> *  **(i)** is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title;*
> *  **(ii)** provides self-certification that the individual--*
> *    **(I)** is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because--*
> *      **(aa)** the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;*
> *      **(bb)** a member of the individual's household has been diagnosed with COVID-19;*
> *      **(cc)** the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;*
> *      **(dd)** a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;*
> *      **(ee)** the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;*
> *      **(ff)** the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;*
> *      **(gg)** the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;*
> *      **(hh)** the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;*

---

[40] Departamento del Trabajo y Recursos Humanos, Carta Circular Núm. 2020-04 del 15 de septiembre de 2020.
[41] *Id.*

*(ii) the individual has to quit his or her job as a direct result of COVID-19;*

*(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or*

*(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section; or*

*(II) is self-employed, is seeking part-time employment, does not have sufficient work history, or otherwise would not qualify for regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 of this title, and meets the requirements of subclause (I); and*

*(iii) provides documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment not later than 21 days after the later of the date on which the individual submits an application for pandemic unemployment assistance under this section or the date on which an individual is directed by the State Agency to submit such documentation in accordance with section 625.6(e) of title 20, Code of Federal Regulations, or any successor thereto, except that such deadline may be extended if the individual has shown good cause under applicable State law for failing to submit such documentation; and*

*(B) does not include--*

*(i) an individual who has the ability to telework with pay; or*

*(ii) an individual who is receiving paid sick leave or other paid leave benefits, regardless of whether the individual meets a qualification described in items (aa) through (kk) of subparagraph (A)(i)(I).*

*[…].*[42]

Con el propósito de mantener la integridad del programa de desempleo, y atajar la posibilidad de fraude en programas federales, el Departamento del Trabajo de los Estados Unidos emitió el **11 de mayo de 2020**, el *Unemployment Insurance Program Letter* (UIPL), No. 23-20. Asimismo, en Puerto Rico en pos de combatir el fraude en los programas federales, el **15 de septiembre de 2020** emitió la *Carta Circular Núm. 2020-04*,[43] mediante la cual se estableció el Certificado de Registro de Comerciante como condición para ser elegible al PUA.[44] De igual forma, se hizo un acuerdo colaborativo entre el Depto. de Hacienda y el DTRH para compartir información vital de los solicitantes.[45]

---

[42] 15 USCA sec. 9021(a)(3).

[43] DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS, CARTA CIRCULAR NÚM. 2020-04 del 15 de septiembre de 2020.

[44] *Id.*

[45] Orden Ejecutiva Núm. 2020-053, *Para brindar acceso al Departamento del Trabajo y Recursos Humanos a la Información necesaria en manos del Departamento De Hacienda con el propósito de agilizar los procesos relacionados a los Programas de desempleo* (13 de julio de 2020).

**-D-**

Ley Núm. 8 del 4 de febrero de 2017, según enmendada, conocida como la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico* (Ley Núm. 8 - 2017) enuncia en su Sección 6.6 las *Disposiciones sobre Retención*.[46] En lo pertinente, establece que cuando la conducta de un empleado no vaya acorde con las normas y requerimientos instituidos, la agencia deberá aplicar las medidas correctivas o acciones disciplinarias necesarias y adecuadas.[47] La destitución es una de las medidas correctivas a considerar.[48] En caso de que la Agencia o Autoridad Nominadora determine destituir a cualquier empleado de carrera por justa causa, deberá notificar previamente la formulación de cargos por escrito y apercibirlo de su derecho a solicitar vista previa conforme a los procesos de disciplina progresiva como se establece en el reglamento.[49] Las Autoridades Nominadoras tendrán la obligación de imponer la acción disciplinaria que proceda a cualquier funcionario o empleado que intencionalmente, por descuido o negligencia incumpla cualquiera de las disposiciones de esta Ley.[50] Cuando la conducta imputada al empleado configure una situación real o potencial de peligro para la salud, vida, propiedad o moral de los empleados de la agencia o de la ciudadanía en general, las Autoridades Nominadoras podrán efectuar suspensiones sumarias. En esos casos, deberá celebrar la vista informal dentro del término de diez (10) días siguientes a la suspensión.[51]

De igual manera, la Sección 6.6 dispone en el inciso 9 las acciones que el empleado no puede realizar. Entre ellas, establece:

---

[46] La Ley Núm. 8 de 4 de febrero de 2017, según enmendada, conocida como la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, 3 LPRA sec. 1469 *et seq.*
[47] 3 LPRA sec. 1472f (3).
[48] *Id.*
[49] 3 LPRA sec. 1472f (4)
[50] 3 LPRA sec. 1472f (5).
[51] 3 LPRA sec. 1472f (6).

a.      Aceptar regalos, donativos o cualquier otra recompensa por la labor realizada como empleado público a excepción de aquellas autorizadas por ley.

b.      Utilizar su posición oficial para fines político partidistas o para otros fines no compatibles con el servicio público.

c.      Realizar funciones o tareas que conlleven conflictos de intereses con sus obligaciones como empleado público.

d.      Realizar u omitir cualquier acción prohibida por la Ley 1-2012, según enmendada, conocida como "Ley de Ética Gubernamental de Puerto Rico de 2011".

e.      Observar conducta incorrecta o lesiva al buen nombre de la agencia o al Gobierno de Puerto Rico.

f.      Incurrir en prevaricación, soborno o conducta inmoral.

g.      Realizar acto alguno que impida la aplicación de esta Ley y las reglas adoptadas de conformidad con la misma; hacer o aceptar a sabiendas, declaración, certificación o informe falso en relación con cualquier materia cubierta por la Ley.

h.      Dar, pagar, ofrecer, solicitar o aceptar directa o indirectamente dinero, servicios o cualquier otro valor a cambio de una elegibilidad, nombramiento, ascenso u otra acción de personal.

i.      Incurrir en conducta relacionada con delitos contra el erario público, la fe y función pública o que envuelvan fondos o propiedad pública.[52]

Igualmente, el *Manual de Normas de Conducta y Procedimiento Sobre Medidas Correctivas y Acciones Disciplinarias del Departamento del Trabajo* (Manual del DTRH) recoge una serie de disposiciones que debe cumplir un empleado de dicha agencia.[53] Particularmente, y en lo pertinente a este caso, establece que un empleado no podrá observar una conducta incorrecta o lesiva al buen nombre de la agencia o al Gobierno de Puerto Rico.[54]

**-III-**

En resumen, el DTRH nos señala que el TPI incidió al confirmar el *Laudo* y concluir que los despidos no fueron en violación al CARES Act, la Ley Núm. 8–2017 y el Manual del DTRH; ni considerar, las cartas de destitución ni la determinación del Oficial Examinador como parte del debido proceso de ley. Tiene razón.

---

[52] 3 LPRA sec. 1472f (9).

[53] Departamento del Trabajo y Recursos Humanos, *Manual de Normas de Conducta y Procedimiento Sobre Medidas Correctivas y Acciones Disciplinarias del Departamento del Trabajo.*

[54] *Id.*, en la sec. 5.2.

**En primer orden**, surge del expediente que antes y durante la Pandemia del Covid-19, *Rafael Acevedo Acevedo, Ivelisse Rivera Rodríguez, Tito E. García Bruno Reyes y Emanuel Díaz Reyes,* eran empleados a tiempo completo del DTRH y sus ingresos principales, —que provenían de esa agencia— no se vieron afectados por la emergencia de la pandemia.

**En segundo orden**, a tono con la ley federal *Coronavirus Aid Relief and Economy Security Act* (CARES Act), que creó el programa temporero llamado *Pandemic Unemployment Assistance* (PUA),[55] los empleados del DTRH, *Rafael Acevedo Acevedo, Ivelisse Rivera Rodríguez, Tito E. García Bruno Reyes y Emanuel Díaz Reyes,* no cualificaban para recibir los beneficios del PUA, aunque sus ingresos por negocios propios menguaran a causa de la pandemia. No obstante, estos empleados solicitaron los beneficios del PUA y en la solicitud omitieron informar que eran empleados del DTRH y los ingresos devengados en la agencia.

**En tercer orden**, acordado por las partes que la contención a dilucidar ante el árbitro de la CASP consistía en, *si el DTRH destituyó a los querellantes en violación a la ley CARES Act y al debido proceso de ley*. Resulta forzoso concluir que el TPI erró al no revocar el laudo emitido. Nótese, que el 6 de octubre de 2020 el Secretario del DTRH notificó la carta de intención de destitución a los empleados *Rafael Acevedo Acevedo, Ivelisse Rivera Rodríguez, Tito E. García Bruno Reyes y Emanuel Díaz Reyes,* en las que se les informó los hechos que lo motivaban y las faltas cometidas. También, se les notificó y fue celebrada una vista administrativa ante el Oficial Examinador que basado en la prueba presentada, hizo unas determinaciones de hechos y conclusiones de derecho en la que recomendó —y así fue

---

[55] 15 USCA sec. 9021.

acogida por el Secretario el 17 de noviembre de 2020— la destitución de los empleados aquí recurridos.

En consecuencia, se expide el auto de *certiorari* y revocamos la Sentencia recurrida que confirmó el laudo emitido. De manera que, se valida la destitución por justa causa de *Rafael Acevedo Acevedo, Ivelisse Rivera Rodríguez, Tito E. García Bruno Reyes y Emanuel Díaz Reyes.*

**-IV-**

Por los fundamentos antes expresados, **expedimos** el recurso de *certiorari* y en consecuencia **revocamos** la *Sentencia* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones